COMMONWEALTH of Pennsylvania, Appellee

v.

Tammy Sneath GRIMES, Appellant.

Superior Court of Pennsylvania.

Argued Aug. 25, 2009.

Filed Sept. 30, 2009.

Phillip O. Robertson, Altoona, for appellant.

Deanne E. Paul, Assistant District Attorney, Hollidaysburg, for Commonwealth, appellee.

BEFORE: BENDER, BOWES and CLELAND, JJ.

OPINION BY BENDER, J.:

¶ 1 Tammy Sneath Grimes, Appellant, appeals from the judgment of sentence imposed after she was convicted by a jury on December 14, 2007, of theft and receiving stolen property. Appellant raises four issues for our review: (1) Whether the trial court erred in denying Appellant the use of the justification defense; (2) Whether the trial court erred in precluding the testimony from two defense experts; (3) Whether the trial court erred in instructing the jury on the issue of intent for the theft crime; and (4) Whether the trial court abused its discretion in sentencing Appellant. We affirm.

¶ 2 Appellant is the founder and executive director of a non-profit organization called Dogs Deserve Better, Inc., which works to bring dogs that are chained or penned outdoors into the home and family. N.T. Trial, 12/14/07, at 27, 29. On September 11, 2007, the organization received a call about a dog that was chained outside the home of Steve and Lori Arnold ("Arnolds"). *Id.* at 31. The caller said that the dog appeared to be in need of medical attention and that she had reported the dog to the Humane Society with no response. *Id.* at 31–32. After receiving a second call about the dog, Appellant and an employee of Dogs Deserve Better, Inc., went to the Arnolds' house where they observed the dog lying on the ground. *Id.* at 32, 33–34. Appellant proceeded to "document" the case by photographing the dog "to show the condition of the dog." *Id.* at 34.

¶ 3 After photographing the dog, Appellant's employee knocked on the Arnolds' door but no one answered. *Id.* at 44–45. Appellant and her employee then took the dog from the premises and transported it directly to a veterinarian, Dr. Noureldin Hassane. *Id.* at 46. When Appellant arrived at Dr. Hassane's office with the dog, a Humane Officer, Officer Gutshall, was there waiting for her. *Id.* at 48. Officer Gutshall allowed the veterinarian to treat the dog. *Id.* at 48. The Officer had to leave the veterinarian's office before the dog was released. *Id.* at 49. After the dog received medical care, Appellant took the dog to her home. *Id.* at 51–52.

¶ 4 Later that evening, Appellant was contacted by a police officer, Officer Flaig, who inquired about the dog. *Id.* at 55. Officer Flaig directed Appellant to return the dog to the Arnolds or to the police. *Id.* at 56. Appellant testified that she refused to return the dog to the Arnolds or to the police because she believed that the dog would die if given back to the Arnolds. *Id.* at 55. Thus, Appellant was arrested and charged with theft by unlawful taking and receiving stolen property. Appellant subsequently placed the dog in two different "foster homes" where it remained for five and a half months until it died. *Id.* at 59.

¶ 5 After her arrest, Appellant admitted that she took the dog on radio and television shows, and also posted pictures and videos of the dog on the Internet. Trial Court Opinion, 6/25/08, at 2. Due to this publicity, Appellant "profited personally from the sale of artwork based on the image of the stolen dog, as did the organization of which she is founder and salaried executive director, Dogs Deserve Better." *Id.*

¶ 6 Prior to Appellant's trial, the Commonwealth moved to preclude Appellant from arguing the defense of justification

under 18 Pa.C.S. § 503. On November 5, 2007, the trial court granted the Commonwealth's motion to preclude the justification defense, finding that it was inapplicable to Appellant's case. On December 12, 2007, Appellant's jury trial began. On December 14, 2007, the jury convicted her of theft by unlawful taking and receiving stolen property.

¶ 7 Appellant was sentenced on February 22, 2008, to a period of probation of twelve (12) months and was directed to perform, and pay all costs of performing three hundred (300) hours of community service. Appellant was also ordered to remove all images of the dog and all references to the dog and to the Arnolds that were placed by Appellant or generated by her, from the Internet. Lastly, Appellant was directed to pay all costs of prosecution of her case, including sheriff's fees of $563.34 and court administration/jury fees of $1,189.15. Appellant filed a timely notice of appeal on March 3, 2008. Pursuant to the trial court's order, Appellant filed a timely, concise statement of the matters complained of on appeal in accordance with Pa.R.A.P.1925(b).

¶ 8 The first issue that Appellant raises for our review is whether the trial court erred in denying her the use of the justification defense under 18 Pa.C.S. § 503. Section 503 states:

(a) **General rule.**—Conduct which the actor believes to be necessary to avoid a harm or evil to himself or to another is justifiable if:

(1) the harm or evil sought to be avoided by such conduct is greater than that sought to be prevented by the law defining the offense charged;

(2) neither this title nor other law defining the offense provides exceptions or defenses dealing with the specific situation involved; and

(3) a legislative purpose to exclude the justification claimed does not otherwise plainly appear.

(b) **Choice of evils.**—When the actor was reckless or negligent in bringing about the situation requiring a choice of harms or evils or in appraising the necessity for his conduct, the justification afforded by this section is unavailable in a prosecution for any offense for which recklessness or negligence, as the case may be, suffices to establish culpability.

18 Pa.C.S. § 503.

¶ 9 In determining whether the justification defense was available in Appellant's case, the trial court analyzed the definition of "actor" as used in section 503 by looking to 18 Pa.C.S. § 103, which defines "actor" as "a person guilty of an omission." Trial Court Order And Opinion, 11/5/07, at 7. The court concluded that "there is no question under the definitional section of Title 18 whether an 'actor' is a person." *Id.* The court then reasoned that the term "himself" in section 503 refers to "actor" and is "therefore also a person." *Id.* Thus, the trial court determined that:

[T]he only conclusion that can be drawn from analysis of the ordinary usage of the plain language of Section 503 is that the defense of justification is only available to a person seeking to avoid a harm or evil to himself or to another person.

*Id.*

¶ 10 We agree with the trial court that 18 Pa.C.S. § 503 provides a justification defense only when it is a person who is in danger of harm, and therefore, the statute does not apply to dogs. This conclusion is supported by the fact that under Pennsylvania law, a dog is deemed to be personal property. 3 P.S. § 459–601(a). Additionally, we agree with the trial court that, even if the justification defense were applicable to dogs, Appellant "would still fail in some other element of the proof

required to make out the justification defense" as set forth by the Pennsylvania Supreme Court in *Commonwealth v. Capitolo*, 508 Pa. 372, 498 A.2d 806 (1985). In that case, the Supreme Court declared that the defense of justification is only available when the defendant can make an offer of proof which establishes:

(1) that the actor was faced with a clear and imminent harm, not one which is debatable or speculative;

(2) that the actor could reasonably expect that the actor's actions would be effective in avoiding this greater harm;

(3) that there is no legal alternative which will be effective in abating the harm; and

(4) that the Legislature has not acted to preclude the defense by a clear and deliberate choice regarding the values at issue.

Trial Court Order and Opinion, 11/5/07, at 5 (citing *Capitolo*, 498 A.2d at 809). The Supreme Court explained the standard set forth in *Capitolo*, declaring that, "Where the proffered evidence supporting one element of the defense is insufficient to sustain the defense, even if believed, the trial court has the right to deny use of the defense and not burden the jury with testimony supporting other elements of the defense." *Capitolo*, 498 A.2d at 809.

¶ 11 Applying *Capitolo* to the case at hand, Appellant would be unable to prove that there was "no legal alternative which [would] be effective in abating the harm." *Capitolo*, 498 A.2d at 809. For instance, Appellant could have contacted the Arnolds and attempted to convince them that their dog needed medical attention immediately. She also could have offered to pay for that medical care with her organization's funds. Additionally, after the dog had received medical attention, Appellant could have returned the dog to the Arnolds and attempted to convince them to change their method of caring for the dog. Lastly, if, after all of these alternatives were attempted and she was still concerned about the dog, she could have notified the proper authorities and/or filed a complaint. Thus, Appellant would have failed in her obligation to prove that there were no legal alternatives which would have been effective in abating the harm to this dog. We conclude that the trial court properly found that the justification defense was not available to Appellant.

■ ¶ 12 The second issue that Appellant raises is whether the trial court erred in precluding the testimony of two prospective defense experts. The first expert that Appellant sought to call, Jim Crosby ("Crosby"), is an animal abuse investigator whose testimony allegedly would have shown that the local police department and the humane officer, Officer Gutshall, did not adequately investigate the alleged abuse the dog was suffering. Appellant contends that Crosby's testimony would have been "used in an attempt to destroy [Officer] Flaigh's [sic] testimony as Flaig previously testified that at some later point in time, he did conduct an investigation into whether the Arnolds neglected the dog, but determined no charges were appropriate." Appellant's Brief at 24. Appellant argues that Crosby's testimony was relevant in attacking the credibility of Officer Flaig. *Id.*

¶ 13 Additionally, Appellant sought to call a veterinarian, Frank McMillan ("McMillan"), to testify that, based on a review of the pictures of the dog and the medical reports from the treating veterinarian, that it was reasonable for Appellant to believe that the dog was in serious peril and needed immediate medical care. While denying Appellant's request to admit the testimony of McMillan, the trial court did admit the testimony of Dr. Has-

sane, the veterinarian who treated the dog the day Appellant took it from the Arnolds' home.

¶ 14 "The admissibility of expert testimony is within the sound discretion of the trial court and will not be reversed absent a clear abuse of discretion." *Commonwealth v. Petrovich*, 538 Pa. 369, 648 A.2d 771, 772 (1994) (citing *Houston v. Canon Bowl, Inc.*, 443 Pa. 383, 278 A.2d 908, 910 (1971)). Here, the trial court denied Appellant's request to admit the testimony of Crosby and McMillan, explaining that:

It is in the trial court's discretion to allow or not allow testimony that is cumulative or may confuse the jury. Here, the trial court allowed the testimony of the [Appellant's] veterinarian despite the fact that the testimony went solely to the justification defense that the Court had disallowed. The Court barred the Commonwealth from presenting a veterinarian in response. The offer of proof on the two defense witnesses revealed that their testimony also went to the disallowed justification defense and was cumulative and/or not relevant. For those reasons, the trial court elected within its discretion to disallow the testimony.

Trial Court Opinion, 6/25/08, at 4–5.

¶ 15 Appellant has failed to show that Crosby's testimony would have been relevant to anything other than the justification defense that Appellant was properly precluded from using. Likewise, the testimony of a second veterinarian would also have been relevant only to the inapplicable justification defense, or cumulative to Dr. Hassane's testimony. Thus, we conclude that the trial court did not abuse its discretion in excluding the testimony of these two expert witnesses.

¶ 16 The third issue that Appellant raises is whether the trial court erred in its instruction to the jury on the issue of intent. Our standard of review of a trial court's jury instruction is well-settled:

When reviewing a challenge to a jury charge, we must examine the trial court's instruction in its entirety, against the background of all evidence presented, to determine whether error was committed. A jury charge is erroneous if the charge as a whole is inadequate, unclear, or has a tendency to mislead or confuse the jury rather than clarify a material issue. Therefore, a charge will be found adequate unless the issues are not made clear to the jury or the jury was palpably misled by what the trial judge said.

*Buckley v. Exodus Transit & Storage Corp.*, 744 A.2d 298, 305–06 (Pa.Super.1999) (citation omitted).

¶ 17 Appellant contends that the trial court instructed the jury erroneously that, "Intent to deprive for a theft crime does not have to be at the time the object or thing was taken, but can develop afterwards." Appellant's Brief at 26. We first note that this language was not used by the trial court in instructing the jury. Instead, the trial court read the following instruction to the jury with regard to intent:

A person acts with intent if it is his or her conscious object to engage in such conduct or cause such a result. As I have told you, one of the elements of this crime is that the defendant intended to deprive the Arnolds of their dog. There is no time requirement as to when the intent to deprive the owners of their property was formed.

Ordinarily, it is not possible to prove intent by direct evidence, unless, for example, there is evidence that the defendant made a statement concerning her

state of mind. However, intent, like any other matter, may be proved by circumstantial evidence, that is by inferences that reasonably may be drawn from all the facts and circumstances, including the defendant's act and conduct which have been shown by the evidence in this case.

In this case, the case law holds that if the evidence has shown beyond a reasonable doubt that the defendant failed to return the dog to the owners and gave or sent the dog to someone other than the owners, you may conclude that the defendant intended to deprive the Arnolds of their dog. Thus, you may conclude that the defendant intended to deprive the Arnolds of their dog based on circumstantial evidence alone but only if the circumstantial evidence is strong enough to convince you that the Commonwealth has established this intent beyond a reasonable doubt.

N.T. Trial, 12/14/07, at 175–176.

¶ 18 The trial court's instruction is supported by this Court's decision in *Commonwealth v. Elam,* 221 Pa.Super. 315, 293 A.2d 103 (1972). In that case, the appellant was convicted of larceny and receiving stolen goods after he used another man's credit card unlawfully. *Id.* at 103–104. In finding that the appellant intended to steal the card from its rightful owner, this Court stated, "His failure to return the card to either the owner or the issuer, coupled with the act of giving the card to someone other than the owner, shows the requisite intent for stealing or felonious taking." *Id.* at 104. Thus, we concluded in *Elam* that the appellant had the requisite intent to steal the card by virtue of the fact that he did not return the card to its owner and he used the card as his own. *Id.*

¶ 19 Appellant attempts to distinguish *Elam* by arguing that it applies to intangible objects such as credit cards, not to living animals. Appellant's Brief at 27. However, as discussed previously, under the law of Pennsylvania, a dog is personal property just as a credit card is personal property. 3 P.S. § 459–601(a). Thus, we believe that *Elam* is applicable to the case at hand. As in *Elam,* where we found the appellant had the requisite intent to steal by keeping and using the credit card, here, the trial court instructed the jury that, "if the evidence has shown beyond a reasonable doubt that the defendant failed to return the dog to the owners and gave or sent the dog to someone other than the owners, you may conclude that the defendant intended to deprive the Arnolds of their dog." NT. Trial, 12/14/07, at 175–176. Thus, we conclude that the trial court did not err in its instructions to the jury on the issue of intent.

¶ 20 Lastly, Appellant argues that the trial court abused its discretion in the sentence it imposed. Appellant contends that the trial court's imposition of three hundred (300) hours of community service, which cost her $1,500.00, "amounts to a hidden fine against Appellant." Appellant's Brief at 30. Appellant also challenges the court's order that she remove all pictures of the dog and references to the Arnolds from her personal website and the Dogs Deserve Better, Inc., website. Finally, Appellant contends that the trial court erred in imposing certain costs, including sheriff's costs and jury transportation costs.

¶ 21 Appellant is essentially challenging the discretionary aspects of her sentence on appeal. Appeals of discretionary aspects of a sentence are not guaranteed by right. *Commonwealth v. Cleveland,* 703 A.2d 1046, 1048 (Pa.Super.1997). In *Commonwealth v. Cook,* 941 A.2d 7 (Pa.Super.2007), this Court discussed the

four-part analysis that must be conducted before reaching the merits of a discretionary sentencing issue. We stated:

> To reach the merits of a discretionary sentencing issue, we conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, Pa.R.A.P. 902, 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, Pa.R.Crim.P. 720; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa. C.S. § 9781(b).

*Id.* at 11.

¶ 22 Pa.R.A.P. 2119(f) requires an appellant to set forth in his brief a concise statement of reasons relied upon in support of granting allowance of appeal with respect to the discretionary aspects of his or her sentence. *Commonwealth v. Tuladziecki,* 513 Pa. 508, 522 A.2d 17, 19 (1987). The concise statement "must show that there is a substantial question that the sentence imposed was not appropriate under the Sentencing Code" in order for this Court to grant an allowance of appeal. *Commonwealth v. P.L.S.,* 894 A.2d 120, 127 (Pa.Super.2006) (citing *Commonwealth v. Fremd,* 860 A.2d 515, 524 (Pa.Super.2004)). "A substantial question exists where the appellant presents a plausible argument that the sentence violates a provision of the Sentencing Code or is contrary to the fundamental norms underlying our sentencing scheme." *P.L.S.,* 894 A.2d at 127 (citing *Commonwealth v. McNabb,* 819 A.2d 54 (Pa.Super.2003)).

¶ 23 While Appellant timely filed a notice of appeal and properly preserved her sentencing issue in her motion to reconsider, Appellant has failed to set forth in her brief a concise statement in accordance with Pa.R.A.P. 2119(f). Furthermore, even had Appellant's brief conformed to the requirements of Rule 2119(f), Appellant has failed to raise a substantial question that the sentence imposed was not appropriate under the Sentencing Code.

¶ 24 Appellant avers generally that her sentence "amounted to punishment for taking the case to trial" and, if this Court accepts that as true, "then that would raise a substantial question that the sentence imposed was inappropriate." Appellant's Brief at 30. However, Appellant only cites *Tuladziecki* in support of this averment. Nowhere in *Tuladziecki* does the Supreme Court state that this issue raises a substantial question, and Appellant does not point to any such declaration in *Tuladziecki* or any other case. Furthermore, Appellant does not cite any specific provision of the Sentencing Code that was violated. She also fails to explain why her sentence is contrary to the fundamental norms underlying our sentencing scheme. Thus, we conclude that Appellant has not properly preserved this issue for our review.

¶ 25 Judgment of sentence affirmed.