J-S60003-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| EDWIN VALDEZ, | |
| Appellant | No. 263 EDA 2014 |

Appeal from the Judgment of Sentence Entered January 15, 2014
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0002991-2009

BEFORE:  BENDER, P.J.E., LAZARUS, J., and OTT, J.

MEMORANDUM BY BENDER, P.J.E.:               **FILED OCTOBER 13, 2015**

Edwin Valdez (Appellant) appeals from the judgment of sentence of seventeen and one-half to thirty-five years' incarceration, imposed January 15, 2014, following a jury trial resulting in his conviction for aggravated assault, possession of an instrument of crime (PIC), and criminal conspiracy.[1]  We vacate the judgment of sentence and remand.

We adopt the following statement of facts:

[Appellant] worked as an assistant electrician for Carlos Molina's construction company.  [Appellant] knew the complaining witness, Benito Bravo, as [Appellant] was a regular customer at Mr. Bravo's grocery store at 1646 North 29th Street.  When Mr. Bravo sought to have construction work done on the 2nd and 3rd floors of his store, [Appellant] put him in touch with Mr. Molina.  A contract was agreed upon and work commenced.  [Appellant]

_____

[1] Respectively, 18 Pa.C.S. §§ 2702(a)(1), 907(b), and 903(a).

served as the go[-]between for the parties, often collecting payments from Mr. Bravo and supervising the construction work on behalf of [Mr.] Molina. Sometime later, the work halted for lack of proper permits and a dispute arose over the contract. Mr. Bravo had paid approximately $60,000 but had complaints about the work and its completion, which he raised with both [Mr.] Molina and [Appellant]. Mr. Bravo hired an attorney and pursued civil legal action against Mr. Molina based upon the contract. Mr. Bravo's attorney sent numerous demand letters to Mr. Molina. Mr. Bravo then relayed this information to [Appellant], who in turn warned Mr. Bravo against such action on numerous occasions, indicating that [Mr.] Molina was dangerous. On the night of December 23, 2008, [Appellant] and Mr. Bravo spoke on the phone. [Appellant] asked Mr. Bravo if he had a Christmas present for him, which Mr. Bravo took as a strange threat.

On the morning of December 24, 2008, Mr. Bravo exited his house at approximately 7:40 a.m. to go open up his store. He was startled to see one man appearing from behind his van. The man told Mr. Bravo not to move. Mr. Bravo identified the man as [Appellant] by his face and voice. [Appellant] pointed a gun at Mr. Bravo. Mr. Bravo closed his eyes in surprise, and expecting to be shot, he backed up. He opened his eyes[] and saw two other men, whom he was unable to identify, also pointing guns at him. Mr. Bravo then pulled his own concealed gun, which he was licensed to carry, and heard one of the men say, "Shoot, he's armed!" Upon hearing this, Mr. Bravo rolled to the ground to get behind a trashcan. He then heard multiple gun shots hit the trash can, and Mr. Bravo was struck twice in the process, in the thigh and groin. The men fled the scene. Mr. Bravo shouted at the fleeing men and then shouted for help once he realized he was wounded.

Mr. Bravo's wife, Andrea Rodriguez, was equally familiar with [Appellant] from seeing him at the store as a customer and from his presence during the construction project. Ms. Rodriguez witnessed part of the events from the kitchen window where she stood as her husband left the house that morning. She saw three men pointing guns at her husband. When [Appellant] saw her watching from the window approximately 8 feet away, he turned and pointed a gun at her. She ran away from the window to go call the police, but before she placed the call[,] she heard multiple shots. Ms. Rodriguez thought they had killed her

husband, but moments later she went outside to find her husband alive and writhing on the ground bleeding. The police arrived in a few minutes, and Mr. Bravo was transported to the hospital by the first officer on the scene. Mr. Bravo identified [Appellant] as one of the shooters to this officer after arriving at the hospital … and identified [Appellant] again for the detective who later interviewed Mr. Bravo at the hospital.

While Mr. Bravo was transported to the hospital, Ms. Rodriguez remained with their two children at the house. A few hours later, while visiting her husband in the emergency room, Ms. Rodriguez spoke with the detective and identified [Appellant] as one of the shooters.

Trial Court Opinion, 01/30/2015, at 2-4.

In August 2013, a jury convicted Appellant of the charges set forth above.[2] Thereafter, in October 2013, the trial court held a sentencing hearing. At the sentencing hearing, Appellant's daughter and pastor testified on Appellant's behalf; the victim, Mr. Bravo, testified on behalf of the Commonwealth. **See generally** Notes of Testimony (N.T. Sentencing), 10/16/2013.

Appellant had a prior record score of zero, and his most severe crime, aggravated assault (including a deadly weapon enhancement), carried an

_____

[2] In March 2009, the Commonwealth filed formal charges against Appellant for his assault upon Mr. Bravo that also included criminal attempt (murder of the first degree), 18 Pa.C.S. § 901(a); simple assault, 18 Pa.C.S. § 2701(a); recklessly endangering another person, 18 Pa.C.S. § 2705; and additional weapons offenses. **See** Bill of Information, 3/12/2009. A first jury trial, which commenced in February 2012, resulted in a mistrial. **See** Notes of Testimony, 02/17/2012, at 6. A second jury trial commenced in August 2013. At some point prior to commencement of the second trial, the Commonwealth *nolle prossed* these charges. **See** Notes of Testimony, 08/19/2013, at 8; **see also** Criminal Docket CP-51-CR-0002991-2009 at 6.

offense gravity score of ten. The sentencing guidelines suggested: (1) forty to fifty-four months' incarceration, plus or minus twelve months, for the aggravated assault; (2) restorative sanctions to three months' incarceration, plus or minus three months, for PIC; and (3) thirty to forty-two months' incarceration, plus or minus twelve months, for the conspiracy. *See* Trial Court Opinion at 5-6.

Nevertheless, following testimony, the court imposed sentence in the following manner: (1) for aggravated assault, ten to twenty years' incarceration; (2) for PIC, two and one-half to five years' incarceration; and (3) for conspiracy, five to ten years' incarceration. The court directed each sentence to be served consecutively, for an aggregate sentence of seventeen and one-half to thirty-five years.

The court acknowledged the severity of the sentencing, explaining:

What I do know is you were sent there to do a job for Mr. [Molina] to take this man out who had filed a lawsuit against him. … [Y]ou knew where he lived and you knew that he held cash there and you went there to rob him with two other people armed with the full intent of taking him out.

I do mean I believe you would have gone as far as killing him. I believe that is how cold your heart is. When you knew he was coming down the stairs at 7:00 to go to work, I think you would have gone as far as killing him. If it is not for the fact that he [was carrying] a weapon, he wouldn't be sitting here.

…

And I believe when you took him out, death or incapacitation, you were going upstairs [into the house] and you were going to take out the wife and the kids and anyone else it took to get to the money, because you wanted the money for you or Mr.

[Molina], I don't know.  But you went there as [an] assault team and you went there with weapons of destruction and went there to kill or take him out by permanently disabling him for the money.

…

This calls for a severe sentence and no mitigation.  [Five] to [ten] is not enough.  You are a man … who is capable of cold[-] blooded murder.

…

Sir, you deserves [*sic*] every moment of this sentence because you went in there to take out [four] bodies one way or another.

N.T. Sentencing at 16-17.

Following imposition of sentence, Appellant challenged the court, suggesting that "there is really no evidence to support what you have stated with regard to going there to commit one murder much less four."  ***Id.*** at 17.  The court responded, stating, "I said one way or the other death or incapacitation and I believe he would have done it."  ***Id.***

Appellant timely filed a post-sentence motion, asserting that his sentence was excessive because: (1) the court failed to credit evidence of mitigation; (2) regarding both the aggravated assault and PIC convictions, the court imposed the statutory maximum sentence; (3) regarding the PIC conviction, the court failed to consider and/or place on the record the sentencing guidelines range; and (4) the reasons articulated by the court were based upon speculation.  ***See*** Motion for Reconsideration of Sentence, 10/28/2013, at 2.  Appellant further asserted that his sentence violated the

Eighth and Fourteenth Amendments to the United States Constitution as cruel and unusual punishment. *Id.* The court denied Appellant's motion. *See* Trial Court Order, 12/17/2013.

Appellant timely appealed. However, in September 2014, this Court dismissed his appeal for failure to file a brief. *See* Order of Court, 09/10/2014. Appellant sought and was granted reinstatement of his appeal. *See* Application to Reinstate Appeal, 09/22/2014; Order of Court, 09/26/2014. Thereafter, Appellant sought remand to the lower court to file a Pa.R.A.P. 1925(b) statement *nunc pro tunc*. *See* Application for Remand, 10/28/2014. This Court granted Appellant relief and directed the lower court to file a responsive opinion. *See* Order of Court, 11/14/2014.

Appellant filed a Rule 1925(b) statement in which he asserted error on the following grounds: (1) the court stated inadequate reasons for its deviation from the sentencing guidelines; (2) the court violated Appellant's due process rights; and (3) the court erred in denying Appellant's motion for a mistrial based upon the cumulative effects of inappropriate statements and actions of the prosecutor.[3] *See* Appellant's Pa.R.A.P. 1925(b) Statement at

---

[3] Appellant has abandoned the third issue raised in his Rule 1925(b) statement regarding his motion for a mistrial. *See generally* Appellant's Brief (stating no question and failing to develop any argument in this regard).

2. The lower court complied with the order of this Court, filing a responsive opinion. Accordingly, this matter is now ripe for review.

Appellant raises the following, compound issue:

Did not the lower court err as a matter of law and abuse its discretion in imposing a sentence of incarceration totaling [seventeen] and one-half to [thirty-five] years[,] inasmuch as the sentence was manifestly excessive and unreasonable[;] the court failed to adequately consider [A]ppellant's background[;] the court ostensibly punished him for crimes the court believed he would have committed, but which were not charged, nor proven[;] and the court failed to state sufficiently adequate, legal reasons for the grave deviation from the sentencing guidelines[;] and was not such an excessive sentence a violation of defendant's right to due process under the Pennsylvania and United States Constitutions?

Appellant's Brief at 3. Essentially, Appellant contends that the lower court (1) abused its discretion and (2) violated his right to due process, by imposing a manifestly excessive sentence. *Id.*

Appellant challenges discretionary aspects of his sentence. **See, e.g.**, **Commonwealth v. Ahmad**, 961 A.2d 884, 886 (Pa. Super. 2008) (recognizing that a claim that a sentence is excessive challenges discretionary aspects of the sentence). Such appeals "are not guaranteed by right." **Commonwealth v. Grimes**, 982 A.2d 559, 565 (Pa. Super. 2009).

It is well-settled that issues challenging the discretionary aspects of sentencing must be raised in a post-sentence motion or by raising the claim during the sentencing proceedings. Absent such efforts, an objection to a discretionary aspect of a sentence is waived.

**Commonwealth v. Oree**, 911 A.2d 169, 172 (Pa. Super. 2006) (citation omitted). "This failure is not cured by submitting the challenge in a Rule

1925(b) statement." **Commonwealth v. Watson**, 835 A.2d 786, 791 (Pa. Super. 2003).

Following our review of the record, we note that Appellant failed to articulate a due process claim at his sentencing hearing or, thereafter, in his post-sentence motion. Its subsequent inclusion in Appellant's Rule 1925(b) statement does not cure these failures. **Id.** Accordingly, we deem this claim waived.[4]

> This does not end the procedural prerequisites to substantive review.
>
> Pa.R.A.P. 2119(f) requires an appellant to set forth in his brief a concise statement of reasons relied upon in support of granting allowance of appeal with respect to the discretionary aspects of his or her sentence. The concise statement must show that there is a substantial question that the sentence imposed was not appropriate under the Sentencing Code in order for this Court to grant an allowance of appeal. A substantial question exists where the appellant presents a plausible argument that the sentence violates a provision of the Sentencing Code or is contrary to the fundamental norms underlying our sentencing scheme.

**Grimes**, 982 A.2d at 566 (quotation marks and citations omitted). Whether an appellant presents "a substantial question is to be evaluated on a case-by-case basis." **Commonwealth v. Williams**, 69 A.3d 735, 740 (Pa.

_____

[4] Appellant also fails to develop an argument in support of this claim. **See** Appellant's Brief at 15-19. Thus, it is waived for this reason as well. **See, e.g.**, **Commonwealth v. Johnson**, 985 A.2d 915 (Pa. 2009) ("[W]here an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived."), _cert. denied_, 562 U.S. 906 (2010); Pa.R.A.P. 2119(a).

Super. 2013) (quoting **Commonwealth v. Ferguson**, 893 A.2d 735, 737 (Pa. Super. 2006)).

Appellant complied with Rule 2119(f), including a statement of the reasons for allowance of appeal in his brief to this Court. **See** Appellant's Brief at 9-12. Therein, Appellant purports to raise two substantial questions, asserting that the lower court imposed an excessive sentence because (1) it failed to consider his rehabilitative needs by disregarding mitigating evidence, **see id.** at 10, 11-12; and (2) it failed to put legitimate reasons on the record to support its deviation from the sentencing guidelines. **See id.** at 11.

However, the Commonwealth contends that Appellant has waived consideration of his claim that the lower court failed to consider his rehabilitative needs, noting that Appellant failed to reference this claim in his Rule 1925(b) statement. We agree.

Rule 1925(b)(4)(ii) provides, in relevant part, that "[t]he [s]tatement shall concisely identify each ruling or error that the appellant intends to challenge with sufficient detail to identify all pertinent issues for the judge." Failure to raise an issue in a Rule 1925(b) statement will result in waiver. **Commonwealth v. Castillo**, 888 A.2d 775, 780 (Pa. 2005) (quoting **Commonwealth v. Lord**, 719 A.2d 306, 309 (Pa. 1998)); **see also Commonwealth v. Hansley**, 24 A.3d 410, 415 (Pa. Super. 2011) (finding waiver where Rule 1925(b) statement was too vague).

Here, Appellant raised three issues in his Rule 1925(b) statement, asserting (1) the court stated inadequate reasons for its deviation from the sentencing guidelines; (2) the court violated Appellant's due process rights; and (3) the court erred in denying Appellant's motion for a mistrial. **See** Appellant's Pa.R.A.P. 1925(b) Statement at 2. Appellant failed to identify his contention that the lower court failed to consider his rehabilitative needs. This deprived the court of an opportunity to address this issue. Accordingly, we deem it waived. **Castillo**, 888 A.2d at 780.[5]

Appellant's remaining claim, that the lower court failed to put legitimate reasons on the record to support its deviation from the sentencing guidelines, establishes a substantial question. **Commonwealth v. Rodda**, 723 A.2d 212, 214 (Pa. Super. 1999) (*en banc*); **Commonwealth v. Hoch**, 936 A.2d 515, 519 (Pa. Super. 2007); **Commonwealth v. Hanson**, 856

_____

[5] Absent waiver, we note that Appellant frames his contention as a failure to consider his rehabilitative needs, citing 42 Pa.C.S. § 9721(b) (requiring the sentencing court to balance "the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant"). However, upon closer inspection, it is apparent that Appellant actually contends that the court failed to credit certain mitigating facts of record. **See** Appellant's Brief at 10-11 (suggesting the court discounted testimony from Appellant's pastor introduced as mitigating evidence). This Court has previously determined that such claims do not establish a substantial question. **Commonwealth v. Buterbaugh**, 91 A.3d 1247, 1266 (Pa. Super. 2014) (*en banc*).

A.2d 1254, 1257 (Pa. Super. 2004).[6]   Because Appellant has raised a substantial question, we may proceed to review the merits of his claim.

Appellant contends that his sentence is manifestly excessive and unreasonable, citing 42 Pa.C.S. § 9781.  According to Appellant, the lower court failed to reference legitimate reasons for its departure from the sentencing guidelines, instead inferring from the facts adduced at trial that Appellant intended to kill Mr. Bravo, Ms. Rodriguez, and their two children in order to rob him and settle a business dispute.  Thus, Appellant concludes that the court punished him for crimes he did not commit.

It is well settled that we review a sentence imposed for an abuse of discretion.  **Commonwealth v. Perry**, 32 A.3d 232, 236 (Pa. 2011) (quoting **Commonwealth v. Walls**, 926 A.2d 956, 961 (Pa. 2007)). Generally, an abuse of discretion "is more than a mere error of judgment; thus, a sentencing court will not have abused its discretion unless the record discloses that the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will."  **Id.** (internal quotation marks omitted); **see also Commonwealth v. Caldwell**, 117 A.3d 763, 770 (Pa. Super. 2015) (*en banc*).  However, where a sentencing court imposes a sentence *outside* the sentencing guidelines, our General Assembly has

---

[6] The Commonwealth concedes this point.  **See** Commonwealth's Brief at 10 (merely addressing the merits of Appellant's claim).

directed that we vacate the sentence and remand, if "the sentence is unreasonable." 42 Pa.C.S. § 9781(c)(3).

Our Supreme Court has noted that "what makes a sentence 'unreasonable' is not defined." **Walls**, 926 A.2d at 963. Our evaluation is informed by factors set forth in Section 9781(d), including:

> (1) The nature and circumstances of the offense and the history and characteristics of the defendant.
>
> (2) The opportunity of the sentencing court to observe the defendant, including any presentence investigation.
>
> (3) The findings upon which the sentence was based.
>
> (4) The guidelines promulgated by the commission.

42 Pa.C.S. § 9781(d); **see also Walls**, 926 A.2d at 963 ("Indeed, based upon the very factors set out in Section 9781(d), it is clear that the General Assembly intended the concept of unreasonableness to be inherently a circumstance-dependent concept that is flexible in understanding and lacking precise definition.").

This Court has observed that "[a] sentencing court may consider any *legal* factor in determining that a sentence *in the aggravated range* should be imposed." **Commonwealth v. Stewart**, 867 A.2d 589, 592-93 (Pa. Super. 2005) (emphasis added) (citing **Commonwealth v. Duffy**, 491 A.2d 230, 233 (Pa. Super. 1985)). However, we have also cautioned that notions of fundamental fairness suggest that a defendant should not be sentenced for crimes he did not commit, for which he was not convicted, or, in the case

of a plea bargain, for crimes *nolle prossed*. **Id.** (citing **United States v. Metz**, 470 F.2d 1140, 1143 (3d Cir. 1972), *cert. denied*, 411 U.S. 919 (1973)). Certainly, this principle is no less important where a sentencing court imposes a sentence *beyond* the aggravated range.

With these standards in mind, the lower court's explanation for its sentence exhibits an abuse of its discretion. In our view, it was not appropriate for the court to sentence Appellant based upon its belief that Appellant *intended* to kill or "take out" not only the victim, but also the victim's wife and children. The facts of record do not support the court's inference.

Of course, this case is quite different from others we have reviewed, in which a sentencing court has appreciated the nature and circumstances surrounding a criminal act. For example, in **Caldwell**, a case involving aggravated assault and robbery, we affirmed an aggravated range sentence where the sentencing court noted the defendant's lack of concern for innocent bystanders. **See Caldwell**, 117 A.3d at 771 ("But for the grace of God that no one was killed.").[7] In **Commonwealth v. Miller**, 965 A.2d 276 (Pa. Super. 2009), we affirmed a standard range sentence for third degree

---

[7] The aggravated range sentence in **Caldwell** required a slightly different determination. **Id.** at 775 (Wecht, J., concurring) (noting that "[a] trial court abuses its discretion when it orders an aggregate sentence that is 'clearly unreasonable' within the meaning of 42 Pa.C.S. § 9781(c)") (quoting **Commonwealth v. Coulverson**, 34 A.3d 135, 139 (Pa. Super. 2011)).

murder where the sentencing court referenced a fire caused by the defendant. *Id.* at 280.[8]

Here the lower court imposed a sentence outside the sentencing guidelines based upon facts not of record, asserting crimes for which Appellant was neither charged nor convicted. Accordingly, the sentence imposed was not reasonable.

Sentence vacated. Case remanded for resentencing. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/13/2015

---

[8] In *Miller*, the defendant was originally charged with arson; however, the charge was *nolle prossed* pursuant to the defendant's plea agreement. We concluded that "the court's mere reference" to the fire did not indicate "that the court specifically considered the charge of arson and enhanced [the appellant's] sentence based thereon." *Id.* By contrast, here, the lower court enhanced Appellant's sentence expressly based upon crimes for which he was not charged or convicted.