J-A13029-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| GARY LEE GATES | : | |
| | : | |
| Appellant | : | No. 1290 WDA 2023 |

Appeal from the Judgment of Sentence Entered December 20, 2018
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s):  CP-02-CR-0011095-2017

BEFORE:  OLSON, J., SULLIVAN, J., and BENDER, P.J.E.

MEMORANDUM BY SULLIVAN, J.:　　　　**FILED:  November 14, 2024**

Gary Lee Gates ("Gates") appeals *nunc pro tunc* from the judgment of sentence imposed after a jury found him guilty of two counts of aggravated assault.[1]  We affirm.

In July 2017, Gates shot David Fields ("Fields") on the 200 block of Fern Street, in Pittsburgh.[2]  Gates claimed he shot Fields in self-defense.  At trial, the Commonwealth's evidence established that the shooting stemmed from a prior fight in which Fields got the better of Jamar Jones ("Jones").  **See** N.T. 9/26/18, at 176-77.  Immediately after that fight, a witness overheard Jones and Gates talking about "getting" Fields.  **Id**. at 70-71.  Fields testified that one or two weeks before the shooting, Gates called him and said he wanted

---

[1] **See** 18 Pa.C.S.A. § 2702(a)(1).

[2] Witnesses at trial also referred to Fields by the nickname "Wood."  **See e.g.**, N.T., 9/26/18, at 68.

to fight. *See id*. at 178. Fields declined and blocked the number Gates used to call him. *See id*. at 178-79.

On the night of the shooting, Fields had just picked up his four-year old daughter and drove to Fern Street to meet Jasmen Sanders ("Sanders") and get their son. *See id*. at 180. Fields parked on Fern Street and, while waiting for Sanders and their son, he saw, in his mirror, another car creep around the corner and approach his car. *See id*. at 181. Gates was in the other car, and he stopped next to Fields's car. *See id*. at 181-82. Fields testified Gates lifted up a black semiautomatic pistol and stated, "What's up now, N[]?" *Id*. at 181-82, 210-11. Gates drove away, but then turned around, and came back toward Fields's car. *See id*. at 183-84. As Gates's car approached for the second time, Fields feared Gates would start shooting, so Fields got out of his car to protect his daughter, who was still in his car. *See id*. at 186. By the time Fields got out of his car, Gates's car was next to Fields's car, and the driver's side of each vehicle faced the other. *See id*. Fields testified he went to "reach to see if [Gates was] going to pull the gun up," heard approximately five gunshots, and was hit multiple times in the stomach. *Id*. at 186, 188. Fields stated he grabbed the pistol, which, by that time, Gates was pointing at Field's face, and Gates shot Fields through the palm of Fields's hand. *See id*. Fields testified he then punched Gates and tried to get back in his car. Gates drove away from the scene.

A witness got Fields's daughter from Fields's car and took her to a relative's home. *See id*. at 99-100. Sanders, who had parked nearby, put Fields into Fields's car and drove him to a hospital. *See id*. at 152, 187.[3]

Fields identified Gates as the shooter, as did other witnesses to the shooting. At least two witnesses told police they saw Fields punching Gates before hearing the gunshots. Detective Martin Kail ("Detective Kail") prepared a criminal complaint based on the reports from Fields and other witnesses, including the two witnesses who indicated Fields punched Gates before the shooting.[4] *See* Affidavit of Probable Cause, 7/11/17, at 2-3.

Nine days after the shooting, Detective Kail interviewed Gates. *See* N.T., 9/27/18, at 6-8, 32.[5] Gates told the detective he wanted to fight Fields.

_____

[3] Fields nearly died during his initial surgery to repair the damage to his colon, intestines, and spleen, as well as bleeding in his chest. *See* N.T., 9/26/18, at 193. Fields underwent a total of thirty-eight different surgical procedures and spent at least three months in the hospital recovering from the surgeries. *See id*. at 194. Additionally, several bullets struck Fields's car, where Fields's daughter had been sitting.

[4] At trial, the witnesses testified Fields reached or leaned into Gates's car, and it appeared he was hitting Gates. *See* N.T., 9/26/18, at 97-98, 114-15. However, they could not see what Fields was doing with his hands. *See id*. Neither witness saw Fields with a pistol in his hand.

[5] Detective Kail advised Gates of the charges, allowed him to review the affidavit of probable cause, and advised him of his *Miranda* rights. *See* N.T., 9/27/18, at 6-8; *Miranda v. Arizona*, 384 U.S. 436 (1966). At trial, the Commonwealth played a video recording of Gates's interview and provided a separate transcript of the interview. *See* N.T., 9/27/18, at 8 (discussing Commonwealth's Exs. 40-A and 40-B). The certified record transmitted to this Court does not contain the video or the transcript of Gates's interview. We do not find waiver, however, as these omissions do not impede meaningful

*(Footnote Continued Next Page)*

*See id*. at 104-05. He also told police he was on Fern Street on the night of the shooting and saw Fields. *See id*. at 18-19. Gates asserted Fields came up to his car, while carrying a pistol in his left hand, and began punching him with his right hand. *See id*. at 10, 90, 114. Gates claimed he took the pistol from Fields and shot him. *See id*. at 113-14. After the shooting, Gates drove away, discarded the pistol at top of an apartment building in the East Liberty neighborhood of Pittsburgh, and then walked more than three and a half miles to his home. *See id*. at 11-15, 33. Detective Kail noted that Gates had cut his hair between the time of the shooting and the interview. *See id*. at 19-20.

Of relevance to this appeal, we note that after Fields testified Gates had brandished a pistol before the shooting, Gates's counsel did not object. *See* N.T., 9/26/18, at 182. Instead, Gates's counsel cross-examined Fields on the fact that no written police report contained Fields's statement that Gates displayed a pistol before the shooting. *See* N.T. 9/26/18, at 211. Later, during cross-examination of Detective Kail, Gates's counsel elicited the detective's concession that none of his written reports referred to Gates brandishing a pistol before the shooting. *See* N.T., 9/27/18, at 23. Gates's counsel then asked whether Fields "ever" told the detective that Gates had brandished a firearm, and the detective responded Fields related that

_____

review of the issues raised in this appeal. *Cf*. *Commonwealth v. Holston*, 211 A.3d 1264, 1277 (Pa. Super. 2019). We summarize Gates's interview based on other references to the interview at trial.

- 4 -

information during a pretrial interview. *Id*. at 24. At a sidebar conference following the detective's testimony, Gates's counsel asserted the Commonwealth should have disclosed Fields's pretrial statement that Gates brandished a firearm. *Id*. at 25. After further discussion, the trial court stated it would not grant a mistrial and issued a cautionary instruction striking the detective's testimony. *See id*. at 28, 30.[6] Gates did not object to the trial court's cautionary instruction or request any further instructions regarding the discovery violation. *See id*. at 29-31.

Additionally, during Detective Kail's direct examination concerning Gates's police interview, the Commonwealth asked the detective whether Gates stated he knew Fields frequented Fern Street. *See* N.T., 9/27/18, at 18. After the detective answered affirmatively, Gates's counsel objected and asserted the exchange mischaracterized what Gates said during the interview. *See id*. at 18-19. The trial court overruled the objection but reminded the jury that it was the finder of fact responsible for determining what was said. *See id*. at 19.

---

[6] Gates's counsel did not specifically request a mistrial. *See* N.T., 9/27/18, at 25 (indicating at sidebar, Gates's counsel stated, "I am halfway inclined to ask for a mistrial . . ..). Nevertheless, the trial court regarded Gates's counsel's statement as a request for a mistrial and noted a request for a mistrial "is preserved." *Id*. at 30.

Lastly, at the charging conference, the trial court noted it would issue a self-defense instruction, including an instruction on the "castle doctrine."[7] *See id*. at 76. Gates's counsel objected to a reference to "criminal activity" in the standard instruction on the castle doctrine, claiming there was no evidence Gates committed a crime before the shooting. *See id*. The Commonwealth responded there was evidence Gates had threatened Fields before the shooting and "appeared on [Fern] street with a gun in his hand" and then turned his car around to reapproach Fields before the shooting. *See id*. at 77. The trial court overruled Gates's counsel's objection, and issued a lengthy instruction on self-defense and the castle doctrine. *See id*. at 77, 148-55.

---

[7] "The castle doctrine is a 'specialized component of self-defense, which recognizes that a person has no duty to retreat from his or her home or occupied vehicle before using deadly force as a means of self-defense.'" *Commonwealth v. Saylor*, 308 A.3d 869, 878 (Pa. Super. 2024), *appeal denied*, 321 A.3d 863 (Pa. 2024) (internal citation and brackets omitted). The doctrine is codified in 18 Pa.C.S.A. § 505(b)(2.1) and (2.2). Section 505(b)(2.1) provides a presumption that an actor has a reasonable belief that deadly force is immediately necessary to protect himself if (i) the person against whom the force is used is in the process of unlawfully and forcefully entering an occupied vehicle and (ii) the actor knows or has reason to know the unlawful entry is occurring. *See* 18 Pa.C.S.A. § 505(b)(2.1). This presumption does *not* apply if the actor is engaged in "criminal activity," which the statute defines as "conduct which is a misdemeanor or felony, is not justifiable under this chapter and is related to the confrontation between an actor and the person against whom force is used." 18 Pa.C.S.A. § 505(b)(2.2)(iii), (d).

The jury found Gates guilty of two counts of aggravated assault.[8] The trial court sentenced him to an aggregate term of eight to eighteen years of imprisonment followed by five years of probation. Gates filed an untimely post-sentence motion and did not take a timely appeal. Following a convoluted process leading to the reinstatement of Gates's appeal rights and the perfection of the appeal,[9] this appeal *nunc pro tunc* followed. Gates and the trial court have complied with Pa.R.A.P. 1925(b).

Gates raises the following issues for our review:

1. Did the trial court err when it denied [Gates's] motion for a mistrial when it was disclosed that the Commonwealth failed to inform the defense [of Fields's] pretrial statement that [Gates] brandished a gun at sometime during the incident as the court's instruction to the jury was insufficient to cure the prejudice to the defendant?

2. Did the trial court err when it charged the jury on the defense of justification when it included instructions on other criminal activity when the Commonwealth presented no evidence of such activity?

3. Did the trial court err when it overruled [Gates's] objection to [Detective] Kail's testimony regarding [Gates's] knowledge of information about [Fields] when it was impermissible leading testimony[?]

Gates's Brief at 3.

_____

[8] Specifically, the jury found Gates guilty of aggravated assault as to Fields and Fields's daughter. The jury did not reach a verdict on a count of attempted murder. The Commonwealth subsequently dismissed the attempted murder count by writ of *nolle prosequi*.

[9] *See Commonwealth v. Gates*, 303 A.3d 764, 2023 WL 4621648 (Pa. Super. 2023) (unpublished memorandum) (detailing the procedural history before this appeal and remanding with instructions).

In his first issue, Gates asserts the trial court erred when it denied a mistrial based on the Commonwealth's failure to disclose Fields's pretrial statement about Gates brandishing a pistol.[10]

The following principles govern our review. A mistrial is an extreme remedy that is not lightly dispensed. *See Commonwealth v. Boczkowski*, 846 A.2d 75, 94 (Pa. 2004). It is granted only where the incident upon which the motion is based is of such a nature that its unavoidable effect is to deprive the defendant of a fair trial by preventing the jury from rendering a true verdict. *See Commonwealth v. Sanchez*, 907 A.2d 477, 491 (Pa. 2006).

Pennsylvania Rule of Criminal Procedure 573 requires the Commonwealth to disclose "[a]ny evidence favorable to the accused that is material either to guilt or to punishment, and is within the possession or control of the attorney for the Commonwealth[.]" *See* Pa.R.Crim.P. 573(B)(1)(a). A trial court has broad discretion to select the remedy for a violation of the discovery rules. *See Commonwealth v. Simmons*, 662 A.2d 621, 634 (Pa. 1995).

Gates argues the Commonwealth's failure to disclose Fields's statement that Gates brandished a pistol before the shooting violated "if not the letter,

---

[10] Gates also claims the cautionary instruction issued by the trial court was inadequate. However, Gates waived this claim by failing to object to the cautionary instruction. *See Commonwealth v. Page*, 965 A.2d 1212, 1222 (Pa. Super. 2009).

[then] the intent of" Rule 573. Gates's Brief at 13.[11] The remainder of Gates's argument focuses on the asserted prejudicial effect of Detective Kail's testimony, which confirmed Fields gave a pretrial statement indicating Gates brandished the pistol. *See id*. at 16. Gates observes Fields was the only witness who testified Gates was armed before the shooting. *See id*. He asserts Detective Kail's testimony bolstered Fields's testimony and undermined Gates's claim of self-defense. *See id*. at 16-17. Gates contends the jury could not "unhear" Detective Kail's testimony and no cautionary instruction could undo the harm. *See id*. at 17.

---

[11] As noted by the Commonwealth, Gates's counsel did not object during opening statements, when the Commonwealth asserted Gates flashed a pistol before the shooting, nor did Gates's counsel object when Fields testified to that effect. *See* Commonwealth's Brief at 20-21; N.T., 9/26/18, at 24 (indicating the Commonwealth's opening statement that Gates "flashed a gun" at Fields before the shooting, but Gates's counsel did not object), 182 (indicating Fields testified during direct examination about Gates showing him a gun, but Gates's counsel did not object), 211 (indicating Gates's counsel cross-examined Fields about whether police wrote down his statement that Gates brandished a firearm). The Commonwealth argues Gates's failure to object to these prior references to the pistol waived any issue concerning the testimony that Gates brandished a pistol before the shooting. *See* Commonwealth's Brief at 21. However, the issue on appeal does not concern the admission of Fields's testimony about Gates brandishing the weapon. Rather, the asserted discovery violation involves the Commonwealth's failure to disclose Fields's pretrial statement Gates brandished a gun before the shooting. Although Gates's counsel might have had reason to suspect the Commonwealth had additional information not disclosed in a written report, the asserted discovery violation only became evident when Detective Kail confirmed Fields told him Gates brandished a pistol before the shooting. Therefore, we disagree with the Commonwealth's suggestion of waiver. As neither the Commonwealth nor the trial court assert the Commonwealth did not violate a duty to provide that information, we also accept the trial court's determination at trial that the Commonwealth should have disclosed Fields told the detective Gates brandished a gun before the shooting.

In response, the trial court noted that Gates did not object when Fields first testified that Gates brandished a pistol before the shooting and only requested a mistrial after Detective Kail testified Fields had relayed that information to him before trial. **See** Trial Ct. Op., 11/2/23, at 4. The trial court concluded that a mistrial was not warranted because the court cured any prejudice by striking the objected-to testimony by Detective Kail and instructing the jury not to consider the stricken testimony. **See id**. at 5.

Following our review, we discern no abuse of discretion in the trial court's decision to deny a mistrial. Although the trial court noted the Commonwealth's failure to disclose Fields's pretrial statement could constitute a violation of the spirit of Rule 573, **see** N.T., 9/27/18, at 29-30, the court struck Detective Kail's testimony and instructed the jury as follows:

> . . . Members of the jury, you heard testimony from this witness[, Detective Kail,] that during a pretrial interview, . . . Fields advised this detective that . . . Gates was brandishing a gun at the time of this incident. You are to ignore, disregard that testimony when you deliberate in this case.
>
> I'm going to strike that from the record, but to the extent that you heard it, I am instructing you right now to ignore the testimony of this detective with respect to David Fields'[s] acknowledgement or statement that . . . Gates had a firearm in his hand at the time of the incident.

**See id**. at 30-31. This Court may presume that the jury followed the trial court's instruction. **See Commonwealth v. Patterson**, 180 A.3d 1217, 1228 (Pa. Super. 2018).

- 10 -

Furthermore, we discern no basis to conclude Detective Kail's reference to Fields's pretrial statement was so prejudicial as to require a mistrial. To be clear, the focus of Gates's objection and the trial court's denial of a mistrial was the Commonwealth's failure to disclose Fields, at some time before trial, told Detective Kail that Gates brandished a pistol. Here, Fields testified, without objection, that Gates brandished the pistol shortly before driving away then turning around to reapproach Fields. **See** N.T., 9/26/18, at 182. Gates's counsel impeached Fields's testimony by noting no police report indicated Fields previously mentioned Gates brandished a pistol. **See id**. at 211. Gates's counsel further elicited Detective Kail's testimony that none of the written reports indicated Fields mentioning Gates brandishing a pistol. **See** N.T., 9/27/18, at 23-24. Although it might have been preferrable for the defense to assert Fields testified about Gates brandishing the pistol for the first time at trial, Gates clearly elicited testimony that Fields did not mention that fact until a pretrial interview with Detective Kail, and that no officer documented Gates's statement in a written report. Under these circumstances, we cannot conclude the Commonwealth's discovery violation so bolstered the credibility of Fields's testimony or undermined Gates's cross-examination of Fields as to require a mistrial.[12]

_____

[12] We note that far more damaging to Gates's self-defense claim was the fact that no witness observed Fields with a pistol before the shooting, the relative implausibility of Gates's account that Fields approached him with a pistol in his left hand and began punching him with his right hand, and the
*(Footnote Continued Next Page)*

In his second issue, Gates challenges the trial court's instruction on self-defense and the castle doctrine.

The trial court has broad discretion in formulating jury instructions where it presents the law to the jury in a clear, adequate, and accurate manner. *See Commonwealth v. Lukowich*, 875 A.2d 1169, 1174 (Pa. Super. 2005). We review jury instructions for an abuse of discretion or error of law. *See Commonwealth v. Rush*, 162 A.3d 530, 540 (Pa. Super. 2017). Trial courts are invested with broad discretion in crafting jury instructions, and such instructions will be upheld where they clearly and accurately present the law to the jury. *See Commonwealth v. Simpson*, 66 A.3d 253, 274 (Pa. 2013). A reviewing court considers the entire charge as a whole, rather than isolated fragments, and considers it against the background of all evidence presented to determine whether error is committed, *i.e.*, if the instruction as a whole is inadequate, unclear, or has a tendency to mislead or confuse the jury on a material issue. *See Commonwealth v. Grimes*, 982 A.2d 559, 564 (Pa. Super. 2009).

Gates claims the trial court erred when it issued the following portion of its instructions on the castle doctrine:

> If . . . Gates knows or had reason to believe that this unlawful and forceful entry [into his occupied vehicle] or act is occurring or has occurred, then the law presumes that [Gates's] belief in the necessity of using deadly force is reasonable and

___

uncontradicted evidence that after allegedly disarming and shooting Fields in self-defense, Gates not only fled the scene, but also abandoned the car, discarded the pistol at an apartment building, and then walked home.

- 12 -

justified. ***However, [Gates] is not presumed to have a reasonable belief that deadly force is immediately necessary to protect himself or . . . when [Gates] is engaged in criminal activity or was using the occupied vehicle to further a criminal activity.***

***Criminal activity means conduct, that is a misdemeanor or felony, is not justifiable under the [C]rimes [C]ode and is related to the confrontation between the actor and the person against whom force is used***. . . .

N.T., 9/27/18, at 150-51 (emphasis added); ***see also id***. at 75-76 (specifically objecting to the Commonwealth's requested point of charge that included the contested language).[13]

Gates asserts the above-cited language was not supported by any evidence he engaged in criminal activity constituting a misdemeanor or felony. ***See*** Gates's Brief at 20. Gates acknowledges Fields's trial testimony that Gates brandished a pistol before the shooting, but claims that testimony was "unproven by any other evidence" except for Detective Kail's improper testimony. ***Id***. Gates further contends that any references to Gates harassing or threatening Fields, after Fields fought Jones, was too remote and too vague to establish Gates was engaged in criminal activity before the shooting. ***See id***. at 20-21. Additionally, Gates notes the Commonwealth did not charge him with committing any criminal offenses before the shooting, and the trial court did not indicate what the jury could consider to be "criminal activity." ***See id***.

_____

[13] Gates did not renew his objection after the trial court's charge. ***See*** N.T., 9/27/18, at 171. However, we decline to find waiver because he preserved a specific objection to the instruction as given and neither the Commonwealth nor the trial court assert Gates waived this issue.

The trial court, in its Rule 1925(a) opinion, rejected Gates's issue. The trial court concluded that the "criminal activity" instruction was proper because there was evidence Gates harassed and threatened Fields and intended to retaliate against Fields for fighting Jones. *See* Trial Ct. Op., 11/2/23, at 8.

We affirm, albeit on different grounds than stated by the trial court. *See Commonwealth v. Sauers*, 159 A.3d 1, 7 n.4 (Pa. Super. 2017) (". . . as an appellate court, we may affirm on any legal basis supported by the certified record") (internal citation and quotation marks omitted). Our review of the record reveals that there were myriad issues of fact concerning self-defense and castle doctrine, including who possessed the pistol and who instigated the shooting. Nonetheless, Gates simply dismisses, as unsupported or incredible, Fields's testimony Gates brandished a pistol, stated "[W]hat's up now?" and then drove off only to turn around and reapproach Fields so the driver's sides of their cars were facing each other. Gates does not argue that Fields's testimony could not establish he was engaged in criminal activity within the meaning of the castle doctrine, and we conclude a jury could find Gates was committing terroristic threats, a first-degree misdemeanor, *see* 18 Pa.C.S.A. § 2706, or using his car in furtherance of a planned shooting, which would constitute felony aggravated assault. *See* 18 Pa.C.S.A. § 2702. Gates's argument conflates the role of the trial court to assess whether there is some evidence to support an instruction, with the role of the jury to pass on weight or credibility of the evidence. *See Commonwealth v. Mayfield*, 585 A.2d

1069, 1071 (Pa. Super. 1991) (*en banc*). Accordingly, Gates has not established a basis for relief with respect to the trial court's castle doctrine instruction.

In his third issue, Gates contends the trial court erred in overruling his objection during the following exchange between the Commonwealth and Detective Kail concerning Gates's statements to police:

> [The Commonwealth]: And you heard [Gates] say that he knew that . . . Wood [(Fields's nickname)] hangs out on Fern Street; correct?
>
> A. Yes.
>
> [The Commonwealth]: And you heard --
>
> [Gates's Counsel]: Your Honor, I'm going to object that[,] that was a mischaracterization of what my client said[,] that Wood hung out on Fern Street.[14]
>
> THE COURT: Members of the jury, I'm going to overrule the objection. Members of the jury, you are the fact finders. You are the ones who determine what was said in this courtroom and what wasn't, so overruled.

N.T., 9/27/18, at 18-19.

Gates now asserts that the Commonwealth's question was leading because it suggested the answer. *See* Gates's Brief at 24. However, Gates's trial objection was based on a mischaracterization of the evidence and did not preserve an objection to the leading form of the question. Therefore, this

_____

[14] As noted above, Gates has not ensured the record contains a copy of his interview or a transcript thereof. However, we note Gates characterizes his statement to police as follows: "During the interview, Detective Kail . . . asked . . . Gates, `[S]o you recognized [David Fields's] ride?" to which Mr. Gates responded, "[Y]eah, he's always up there.'" Gates's Brief at 25.

issue is waived. **See Commonwealth v. Rosser**, 135 A.3d 1077, 1086 (Pa.

Super. 2016) (*en banc*) (noting an appellant cannot change legal theories on

appeal). In any event, even if this issue was properly preserved, we conclude

that any reference to Gates being familiar with Fields's frequenting Fern Street

was *de minimis*, and the trial court's cautionary instruction reminding the jury

they were the sole finders of fact was adequate to cure any prejudice resulting

from this exchange.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 11/14/2024