J-S07043-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT OP 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| CHRISTOPHER VERTICELLI | : | |
| | : | |
| Appellant | : | No. 1827 EDA 2021 |

Appeal from the Judgment of Sentence Entered November 16, 2017
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s):  CP-51-CR-0005468-2016

BEFORE:  DUBOW, J., KUNSELMAN, J., and KING, J.

MEMORANDUM BY KING, J.:                              **FILED JULY 26, 2023**

Appellant, Christopher Verticelli, appeals *nunc pro tunc* from the judgment of sentence entered in the Philadelphia County Court of Common Pleas, following his jury trial convictions for aggravated assault and possessing instruments of crime ("PIC").[1]  We affirm.

The relevant facts and procedural history of this appeal are as follows:

> On May 21, 2016, the Complainant, Lycurgus Hurdle, heard his fiancée, Heather Schwegel, arguing with Appellant and his co-Defendant, Stephanie McKnight, outside his home…. When the Complainant went outside, Appellant told him he was going to "crack [his] fucking head open."  Later that day, the Complainant was walking his dog when his fiancée called telling him to come to the house in a "hurry."  When he returned home, he saw Appellant holding a metal pole like "a baseball bat."  Appellant said: "I'm going to crack your fucking head open, nigger."  Appellant swung the pole, knocking down a rental sign for the house.  He also struck

---

[1] 18 Pa.C.S.A. §§ 2702(a) and 907(a), respectively.

the Complainant's mailbox and door multiple times. Ms. Schwegel called the police. Two officers subsequently arrived, took a report, and advised Schwegel and the Complainant to obtain a restraining order.

Later that evening, around 10:00 p.m., Schwegel and the Complainant were watching television when they heard scratching at the door. The Complainant, believing it was his cat, went outside to retrieve it. He then looked to his right, towards his basement door, and saw Appellant crouching down holding a hammer. Appellant said, "I'm cracking your head open now, nigger," and then hit the Complainant between the eyes with the hammer. The Complainant tried to grab the hammer, but Appellant struck him again above his left eyebrow. Appellant then said, "I'm going to kill you." The Complainant grabbed the hammer and tussled with Appellant towards the street. The Complainant heard McKnight say, "Get the fuck off of him," as she approached from the house next door. McKnight subsequently hit the Complainant twice in the back of the head with another hammer. Appellant then yelled, "Get off me, man. The sirens are coming," and ran towards Mildred Street.

Bleeding from the back of his head and forehead, the Complainant was taken to the hospital in an ambulance. After he received stitches and staples, the Complainant had a five-inch scar above his left eyebrow. He also had a three-inch scar across his nose. At trial, the Complainant testified that his injuries included migraine headaches, light sensitivity, left ear hearing loss, PTSD, and anxiety.

(Trial Court Opinion, filed 6/10/22, at 4-6) (internal footnotes and record citations omitted).

Appellant proceeded to trial, and a jury found him guilty of aggravated assault and PIC. On November 16, 2017, the court sentenced Appellant to ten (10) to twenty (20) years' incarceration for the aggravated assault conviction. The sentence included a mandatory minimum term, pursuant to

- 2 -

42 Pa.C.S.A. § 9714, because this was Appellant's second conviction for a crime of violence. The court imposed no further penalty for the PIC conviction. On November 21, 2017, Appellant timely filed a post-sentence motion. In it, Appellant raised various assertions of error to justify the award of a new trial. The court denied the post-sentence motion on January 18, 2018.

Although Appellant timely filed a notice of appeal, this Court dismissed the appeal for failure to file a brief on April 17, 2019. On April 17, 2020, Appellant requested the reinstatement of his direct appeal rights *nunc pro tunc*. The court granted relief on March 24, 2021. Nevertheless, prior counsel took no further action because he mistakenly believed that the court was going to appoint new appellate counsel. On June 15, 2021, Appellant again requested the reinstatement of his appellate rights *nunc pro tunc*. The court granted relief on August 10, 2021. Thereafter, the court appointed current counsel to assist Appellant with the appeal.

Appellant timely filed a notice of appeal *nunc pro tunc* on September 8, 2021. On September 16, 2021, the court ordered Appellant to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Following an extension, Appellant filed his Rule 1925(b) statement on December 6, 2021.

Appellant now raises four issues for this Court's review:

> Whether the trial court erred, when it ruled that the assistant district attorney could read Commonwealth witness Heather Schwegel's written statement to the police, into the record, on direct examination, as this was a prior consistent statement, which may only be used for the purpose of rehabilitation of a witness, which was not the

case in the above-captioned matter, and this witness had not yet been subjected to cross-examination?

Whether the trial court erred, when it gave the jury an instruction on "consciousness of guilt," specifically stating that "the testimony of Lycurgus Hurdle, that tended to show that [Appellant] fled from the police," as Appellant … did not, in fact, flee from the police or anyone else, as when he was first confronted with the police, he immediately gave them his name, prior to being arrested and taken into custody?

Whether the trial court erred, when it refused to give the jury an instruction on the criminal offense of simple assault, which is a lesser included offense of aggravated assault, as there was evidence to support a jury verdict of not guilty of the greater offense (aggravated assault), but guilty of the lesser offense (simple assault)?

Whether the trial court erred, when it sentenced Appellant … to the mandatory 10 years to 20 years' incarceration, pursuant to 42 Pa.C.S.A. § 9714(a), as the Commonwealth failed to prove that [Appellant] had previously been convicted of a "crime of violence."  While the assistant district attorney presented evidence that [Appellant] had previously been convicted of the criminal offense of robbery (F1), no court order substantiating this conviction was presented at sentencing?

(Appellant's Brief at 6).

In his first issue, Appellant contends that Commonwealth witness Heather Schwegel testified about what she saw outside her home on the night of the altercation.  In light of this testimony, Appellant asserts that the Commonwealth sought permission to introduce Ms. Schwegel's original statement to the police.  Although the court permitted the Commonwealth to introduce this statement, Appellant insists that Ms. Schwegel's prior statement was consistent with her trial testimony, thereby rendering the statement

inadmissible. Appellant concludes that the court committed reversible error by admitting Ms. Schwegel's prior statement. We disagree.

This Court's standard of review for issues regarding the admissibility of evidence is well settled:

> Questions concerning the admissibility of evidence are within the sound discretion of the trial court ... [and] we will not reverse a trial court's decision concerning admissibility of evidence absent an abuse of the trial court's discretion. An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record. [I]f in reaching a conclusion the trial court [overrides] or misapplies the law, discretion is then abused and it is the duty of the appellate court to correct the error.

*Commonwealth v. Belknap*, 105 A.3d 7, 9-10 (Pa.Super. 2014), *appeal denied*, 632 Pa. 667, 117 A.3d 294 (2015) (internal citations and quotation marks omitted).

"Relevance is the threshold for admissibility of evidence." *Commonwealth v. Tyson*, 119 A.3d 353, 358 (Pa.Super. 2015) (*en banc*), *appeal denied*, 633 Pa. 787, 128 A.3d 220 (2015).

> Evidence is relevant if it logically tends to establish a material fact in the case, tends to make a fact at issue more or less probable, or tends to support a reasonable inference or proposition regarding a material fact. Relevant evidence may nevertheless be excluded if its probative value is outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

*Commonwealth v. Danzey*, 210 A.3d 333, 342 (Pa.Super. 2019), *appeal*

*denied*, 656 Pa. 9, 219 A.3d 597 (2019) (internal quotation marks omitted).

Hearsay is an out-of-court statement made by a declarant, which a party seeks to offer into evidence to prove the truth of the matter asserted in the statement. Pa.R.E. 801(c). Generally, hearsay is not admissible except as provided by the Pennsylvania Rules of Evidence, by other rules prescribed by the Pennsylvania Supreme Court, or by statute. Pa.R.E. 802. "The rationale for the hearsay rule is that hearsay is too untrustworthy to be considered by the trier of fact." ***Commonwealth v. Charlton***, 902 A.2d 554, 559 (Pa.Super. 2006), *appeal denied*, 590 Pa. 655, 911 A.2d 933 (2006).

"Exceptions have been fashioned to accommodate certain classes of hearsay that are substantially more trustworthy than hearsay in general, and thus merit exception to the hearsay rule." ***Id.***

> It is long settled that a prior inconsistent statement may be used to impeach a witness. Further, a prior inconsistent statement may be offered not only to impeach a witness, but also as substantive evidence if it meets additional requirements of reliability.

***Commonwealth v. Watley***, 153 A.3d 1034, 1040 (Pa.Super. 2016), *appeal denied*, 641 Pa. 750, 169 A.3d 574 (2017) (internal citations and quotation marks omitted).

> Prior inconsistent statements also can be admitted as substantive evidence provided the declarant testifies at trial and is subject to cross-examination concerning the statement and one of the following is true: 1) the prior inconsistent statement was given under oath subject to the penalty of perjury at a trial, hearing, deposition, or other proceeding; 2) the prior inconsistent statement is contained within a signed writing adopted by the declarant; and/or, 3)

> the rendition of the statement offered is a verbatim contemporaneous recording of an oral statement.

*Commonwealth v. Henkel*, 938 A.2d 433, 442-43 (Pa.Super. 2007), *appeal denied*, 598 Pa. 756, 955 A.2d 356 (2008). *See also* Pa.R.E. 803.1 (stating same).

Instantly, Ms. Schwegel's direct examination testimony included what she witnessed outside her house on the night of the altercation. (*See* N.T. Trial, 5/2/17, at 91-100). Initially, Ms. Schwegel claimed that she saw Appellant's co-defendant, Ms. McKnight, with a hammer in her hands after the altercation. (*Id.* at 92). Ms. Schwegel made no mention of Appellant possessing the hammer during the altercation.[2] The prosecutor then asked the court for permission to show Ms. Schwegel her prior statement to police, which the prosecutor marked as exhibit "CW-3". (*Id.* at 101). The court allowed the prosecutor to proceed, and Ms. Schwegel confirmed that the Commonwealth's exhibit was her signed statement to the police. (*Id.*)

As the prosecutor asked whether the statement had refreshed Ms. Schwegel's recollection of the altercation, defense counsel objected. (*Id.* at 102). Ultimately, the court conducted a sidebar to receive argument regarding the objection. (*Id.* at 104). At that time, defense counsel claimed that the prosecutor could not rely on Ms. Schwegel's prior statement to the

---

[2] Specifically, the prosecutor asked, "At that point [during the scuffle], did you see anything in anybody's hands?" (N.T. Trial, 5/2/17, at 95). Ms. Schwegel responded, "In the scuffle? … No." (*Id.*)

police, because the statement was consistent with her trial testimony. (*Id.* at 106-07). The prosecutor countered that Ms. Schwegel "testified today inconsistently as it relates to … [Appellant] having something in his hands, specifically a hammer when she went outside and began to witness this fight." (*Id.* at 108). The court overruled the objection and permitted the prosecutor to continue with her line of questioning. Thereafter, Ms. Schwegel confirmed that she told police that she had seen Appellant carrying a hammer on the night of the altercation. (*Id.* at 112).

In its opinion, the trial court reiterated that Ms. Schwegel's statement to police and trial testimony were "materially inconsistent." (Trial Court Opinion at 7). We agree with this determination. Here, Ms. Schwegel's prior statement was contained within a signed writing adopted by the declarant. *See Henkel, supra*. Before the prosecutor refreshed Ms. Schwegel's recollection with the prior statement, the witness denied seeing anything in Appellant's hands. On this basis, the court did not abuse its discretion in admitting the prior inconsistent statement. *See Belknap, supra*. Therefore, Appellant is not entitled to relief on his first claim.

In his second issue, Appellant acknowledges that the court provided a "consciousness of guilt" instruction, based upon the Commonwealth's argument that it presented evidence of Appellant's flight from police. Appellant insists that this instruction was unwarranted because he did not actually flee. Rather, Appellant emphasizes that police arrived at his home as

part of their investigation, and he "immediately gave them his name, prior to being taken into custody." (Appellant's Brief at 28). Appellant concludes that the court committed reversible error by providing the jury with the consciousness of guilt instruction. We disagree.

"The trial court has considerable discretion in fashioning a jury charge." *Commonwealth v. Gomez*, 224 A.3d 1095, 1102 (Pa.Super. 2019), *appeal denied*, 661 Pa. 484, 236 A.3d 1053 (2020). "The court is free to use its own expressions, provided it clearly and accurately conveys the applicable legal concepts at issue." *Id.* "The trial court is not required to give every charge that is requested by the parties and its refusal to give a requested charge does not require reversal unless the appellant was prejudiced by that refusal.'" *Commonwealth v. Scott*, 73 A.3d 599, 602 (Pa.Super. 2013) (quoting *Commonwealth v. Brown*, 911 A.2d 576, 583 (Pa.Super. 2006)).

"In reviewing instructions to a jury, we consider the entire charge, 'not merely discrete portions thereof.'" *Gomez, supra* at 1102 (quoting *Commonwealth v. Johnson*, 630 Pa. 493, 552, 107 A.3d 52, 88-89 (2014)). "We examine the entire instruction 'against the background of all evidence presented, to determine whether error was committed.'" *Commonwealth v. Rush*, 162 A.3d 530, 540 (Pa.Super. 2017) (quoting *Commonwealth v. Grimes*, 982 A.2d 559, 564 (Pa.Super. 2009)). "A jury charge is erroneous if the charge as a whole is inadequate, unclear, or has a tendency to mislead or confuse the jury rather than clarify a material issue." *Id.* (quoting *Grimes,*

*supra* at 564).

Instantly, Complainant testified about the ending of his altercation with Appellant. Complainant heard sirens, which prompted Appellant to say, "Get off me, man. The sirens are coming." (N.T. Jury Trial, 5/3/17, at 39). Complainant then watched as Appellant "sprinted off." (*Id.*) Based upon this testimony, the court provided the jury with the following instruction on consciousness of guilt:

> There was evidence, including the testimony of [Complainant], that tended to show that [Appellant] fled from the police. The credibility, weight and effect of this evidence is for you to decide. Generally speaking, when a crime is being committed and a person thinks he or she is or may be accused of committing it and he or she flees or conceals himself or herself, such flight or concealment is a circumstance tending to prove the person is conscious of guilt; however, such flight or concealment does not necessarily show consciousness of guilt in every case. A person may flee or hide for some other motive and may do so even though innocent. Whether the evidence of flight or concealment in this case should be looked at as tending to prove guilt depends on the facts and circumstances of this case and especially upon motives that might have prompted the flight or concealment. … In other words, your decision would have to be based on all the evidence.

(N.T. Trial, 5/4/17, at 141-42).

Regarding Appellant's challenge to the propriety of this instruction, the court concluded that the instruction and reference to Complainant's testimony were not misleading or inaccurate. To the extent Appellant now relies on other testimony from police witnesses regarding his interactions with officers later that evening, the court correctly noted that such testimony "did not negate

[Complainant's] testimony that the Appellant did flee from the police." (Trial Court Opinion at 9). Therefore, examining the entire instruction against the background of all evidence presented, we cannot say that the court erred in providing the jury instruction at issue. *See Gomez, supra*; *Rush, supra*. Therefore, Appellant is not entitled to relief on his second claim.

In his third issue, Appellant contends that simple assault is a lesser included offense of aggravated assault. Appellant insists that the record contained evidence to support a jury verdict of not guilty for aggravated assault, but guilty of simple assault. Because a rational jury could have found Appellant guilty of the lesser included offense of simple assault, and counsel requested a simple assault instruction, Appellant argues that the court should have provided this instruction to the jury. Appellant concludes that the court erred in refusing to instruct the jury on simple assault. We disagree.

The Crimes Code defines simple assault, in relevant part, as follows:

**§ 2701. Simple assault**

**(a)     Offense defined.—**Except as provided under section 2702 (relating to aggravated assault), a person is guilty of assault if he:

(1)    attempts to cause or intentionally, knowingly or recklessly causes bodily injury to another;

(2)    negligently causes bodily injury to another with a deadly weapon; or

(3)    attempts by physical menace to put another in fear of imminent serious bodily injury[.]

18 Pa.C.S.A. § 2701(a)(1)-(3). Additionally, the Crimes Code defines

aggravated assault, in relevant part, as follows:

**§ 2702.  Aggravated assault**

**(a)      Offense defined.—**A person is guilty of aggravated assault if he:

(1)    Attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life[.]

18 Pa.C.S.A. § 2702(a)(1).  "Serious bodily injury" is defined as "[b]odily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ."  18 Pa.C.S.A. § 2301.

"A crime is considered a lesser-included offense when the elements of that crime are a necessary subcomponent of the elements of another crime (referred to as the greater-included offense)."  ***Commonwealth v. Pellecchia***, 925 A.2d 848, 851 (Pa.Super. 2007).  "'Simple assault' as an attempt to cause mere bodily injury is, therefore, a lesser included offense of aggravated assault which is an attempt to cause serious bodily injury."  ***Commonwealth v. Sirianni***, 428 A.2d 629, 632-33 (Pa.Super. 1981) (internal footnote omitted).  "It is not error, however, for a judge to refuse to instruct the jury on the lesser-included offense unless the evidence could support a conviction on the lesser offense."  ***Commonwealth v. Wood***, 475 A.2d 834, 835 (Pa.Super. 1984).

Instantly, Appellant threatened to injure Complainant before attacking

him with a hammer. As a result of the assault, Complainant suffered permanent scarring, light sensitivity, headaches, hearing loss, and mental health issues. (*See* N.T. Trial, 5/3/17, at 46-49). The court concluded that no reasonable jury could find that "Appellant merely attempted or intentionally caused **bodily injury** without trying to cause or intentionally causing **serious bodily injury**." (*See* Trial Court Opinion at 12) (emphasis in original). We agree with the court's determination. *See* 18 Pa.C.S.A. § 2301. Because the evidence did not support a conviction on the lesser offense of simple assault, the court did not err in refusing to instruct the jury on that offense. *See Wood, supra*. *See also Sirianni, supra* (holding court properly refused defendant's request for simple assault charge in prosecution for aggravated assault arising from incident where defendant followed and confronted victim, brandished firearm, and shot victim at point-blank range). Thus, Appellant is not entitled to relief on his third claim.

In his final issue, Appellant acknowledges that the court imposed a mandatory minimum sentence for his aggravated assault conviction, pursuant to 42 Pa.C.S.A. § 9714(a)(1). Appellant insists, however, that the Commonwealth did not produce sufficient evidence at sentencing to prove that Appellant had previously been convicted of another "crime of violence." Although the Commonwealth presented certain court records from Appellant's prior conviction for robbery, which was graded as a first-degree felony, Appellant complains that the Commonwealth did not present the sentencing

order for the robbery conviction. In the absence of the sentencing order, Appellant argues that the Commonwealth failed to prove that his robbery conviction qualified as a crime of violence under Section 9714(g). Appellant concludes that the court imposed an illegal sentence. We disagree.

"[B]ecause a sentencing court loses its authority to exercise discretion when a mandatory minimum sentence applies, the question of the propriety of applying a mandatory minimum sentencing provision implicates [the] legality" of the sentence. **Commonwealth v. Prinkey**, ___ Pa. ___, ___, 277 A.3d 554, 564 (2022) (quoting **Commonwealth v. Wolfe**, 636 Pa. 37, 57, 140 A.3d 651, 663-64 (2016) (Baer, J., concurring)). Section 9714 provides the following mandatory minimum sentencing provision:

> **§ 9714. Sentences for second and subsequent offenses**
>
> **(a) Mandatory sentence.—**
>
> (1) Any person who is convicted in any court of this Commonwealth of a crime of violence shall, if at the time of the commission of the current offense the person had previously been convicted of a crime of violence, be sentenced to a minimum sentence of at least ten years of total confinement, notwithstanding any other provision of this title or other statute to the contrary. Upon a second conviction for a crime of violence, the court shall give the person oral and written notice of the penalties under this section for a third conviction for a crime of violence. Failure to provide such notice shall not render the offender ineligible to be sentenced under paragraph (2).
>
> \* \* \*
>
> **(d) Proof at sentencing.**—Provisions of this section shall not be an element of the crime and notice thereof to

the defendant shall not be required prior to conviction, but reasonable notice of the Commonwealth's intention to proceed under this section shall be provided after conviction and before sentencing.  The applicability of this section shall be determined at sentencing.  The sentencing court, prior to imposing sentence on an offender under subsection (a), shall have a complete record of the previous convictions of the offender, copies of which shall be furnished to the offender.    If  the  offender  or  the  attorney  for  the Commonwealth contests the accuracy of the record, the court shall schedule a hearing and direct the offender and the attorney for the Commonwealth to submit evidence regarding the previous convictions of the offender.    The court shall then determine, **by a preponderance of the evidence**, the previous convictions of the offender and, if this  section  is  applicable,  shall  impose  sentence  in accordance with this section….

42 Pa.C.S.A. § 9714(a)(1), (d) (emphasis added).

The statutory definition for "crime of violence" includes "robbery as defined in 18 Pa.C.S.A. § 3701(a)(1)(i), (ii) or (iii) (relating to robbery)[.]" 42 Pa.C.S.A. § 9714(g).  Regarding the grading of robbery offenses, "robbery under subsection (a)(1)(iv) and (vi) is a felony of the second degree; robbery under subsection (a)(1)(v) is a felony of the third degree; otherwise, it is a felony of the first degree."  18 Pa.C.S.A. § 3701(b)(1).

Additionally, "[a] 'preponderance of the evidence' is only 'the greater weight of the evidence, *i.e.*, to tip a scale slightly is the criteria or requirement for preponderance of the evidence.'"  *Commonwealth v. Neysmith*, 192 A.3d 184, 189 (Pa.Super. 2018), *cert. denied*, ___ U.S. ___, 139 S.Ct. 2640, 204 L.Ed.2d 287 (2019).  "In other words, when weighing the evidence of record, the trial judge need only find that the fact in question is more-likely-

than-not true." *Id.* at 190. "To determine whether the Commonwealth offered evidence sufficient to tip the evidentiary scale in its favor, we will review all of the evidence and testimony offered at the sentencing hearing." *Id.*

Instantly, the court initially conducted Appellant's sentencing hearing on October 27, 2017. At that time, the Commonwealth submitted evidence to prove that Appellant had a prior conviction for a "crime of violence," thereby warranting imposition of a Section 9714 mandatory sentence. Specifically, the Commonwealth presented a written guilty plea colloquy, which Appellant executed on October 20, 1994. (*See* Sentencing Exhibit C-3, dated 10/20/94, at 4). In the colloquy, Appellant indicated that he would be entering a guilty plea to robbery graded as a first-degree felony. (*Id.* at 1). The Commonwealth also introduced a transcript from Appellant's 1994 plea hearing. At that time, the court and prosecutor reiterated that Appellant was pleading guilty for an armed robbery graded as a first-degree felony. (*See* Sentencing Exhibit C-4, dated 10/20/94, at 2). Appellant confirmed his understanding of the grading, and counsel indicated that the plea was "open" as to sentencing. (*Id.* at 2, 9-12). Thereafter, the court accepted the plea and deferred sentencing pending completion of a presentence investigation report. (*Id.* at 14).

After the Commonwealth submitted its exhibits regarding Appellant's prior crime of violence, the court received additional argument from counsel.

(*See* N.T. Sentencing Hearing, 10/27/17, at 20-32). Defense counsel claimed that the Commonwealth had failed to establish the prior crime of violence by a preponderance of the evidence, because there was no evidence that Appellant pled guilty to robbery under Section 3701(a)(1)(i), (ii) or (iii). (*Id.* at 31). At the conclusion of the hearing, the court continued the matter to give the parties additional time to research Appellant's prior conviction. (*Id.* at 35). The hearing resumed on November 16, 2017, and the court received additional argument from the parties. Again, Appellant maintained that the Commonwealth did not present sufficient proof of a prior crime of violence. (*See* N.T. Sentencing Hearing, 11/16/17, at 18). Despite Appellant's arguments, the court imposed the Section 9714 mandatory minimum sentence. (*Id.* at 33-34).

In its opinion, the court addressed Appellant's current argument that the Commonwealth needed to present the sentencing order for the prior crime of violence. The court emphasized that it was "entirely unaware of caselaw, statute, or rule of court requiring the specific production of a Court Order substantiating a prior conviction[.]" (Trial Court Opinion at 18). Our research supports the court's conclusion, and we note that Appellant's brief fails to cite any relevant authority to support his claim. (*See* Appellant's Brief at 35-36). Absent more, we cannot say that the court erred in determining that the Commonwealth satisfied the preponderance of the evidence standard. *See Neysmith, supra* (explaining that Commonwealth need only show that prior

convictions probably belong to offender). ***See also Commonwealth v. Smith***, 866 A.2d 1138 (Pa.Super. 2005), *appeal denied*, 583 Pa. 682, 877 A.2d 462 (2005) (holding that Commonwealth met its burden of establishing defendant's convictions for prior violent crimes by preponderance of evidence; at sentencing, Commonwealth offered certified court documents, FBI rap sheet, and NCIC rap sheet to demonstrate prior convictions). Thus, Appellant is not entitled to relief on his final claim, and we affirm the judgment of sentence.

Judgment of sentence affirmed.

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*

*Date: 7/26/2023*